Russell B. McBROOM, et al., Plaintiffs,

v.

WESTERN ELECTRIC COMPANY, INC.; Communications Workers of America and Local 3061, Defendants.

No. C–362–G–73.

United States District Court, M. D. North Carolina.

Oct. 13, 1981.

---

J. LeVonne Chambers, Ronald L. Gibson and Jonathan Wallas, Charlotte, N. C., for plaintiffs.

Thornton H. Brooks, Greensboro, N. C., for defendant, Western Elec. Co.

James B. Ledford, Charlotte, N. C., and Patrick M. Scanlon, Atlanta, Ga., for defendants, Communications Workers of America and Local 3061.

## MEMORANDUM AND ORDER

GORDON, Chief Judge.

This case is again before the Court for determination of the amount of reasonable attorneys' fees, expenses and the plaintiffs' costs payable by the defendant, Western Electric Company (herein "the Company"), pursuant to agreement between the parties set out in the consent decree entered April 17, 1981.

Counsel agree and the Court finds that the criteria enunciated in *Johnson v. Georgia Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) and adopted in this circuit in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216 (4th Cir. 1978) *cert. denied*, 439 U.S. 934, 99 S.Ct. 329, 58 L.Ed.2d 330 (1978) guide the Court in its determination. Further guidance in applying these criteria is given in *Anderson v. Morris, et al.*, 658 F.2d 246 (4th Cir. 1981).

The *Anderson* instruction is that: (1) the purpose of the Attorney's Fees Awards Act (herein "the Act") is to "compensate prevailing plaintiffs for their costs", (2) entitlement to fees is "the plaintiffs', not their attorneys'", and (3) counsel are to be paid "'as is traditional with attorneys compensated by a fee-paying client, for all time reasonably expended in a matter'". The *Johnson-Barber* criteria are those normally considered by a lawyer in determining the amount he will bill his client in a particular case. This Court believes these principles, fairly applied, will produce a just result without any suggestion of sanctions upon an unsuccessful defendant or a speculative premium for success.

*General Observations*

Although this case did not test the limits of the abilities of counsel for either side, the Court has had the pleasure and benefit of the services of excellent attorneys whose representation of their clients in this and other cases has been exemplary, especially with respect to their competence and diligence as advocates. The factual details and briefing submitted on the *amount* of attorneys' fees present a problem, for the court at least, as complicated and difficult as the substantive issues in the case itself.

This Court takes seriously its duty to decide (subjectively in part—as it must) what is "reasonable" compensation for professional services rendered by the plaintiffs'

attorneys and their staff. Numerous ill-defined factors and circumstances in dispute as to their existence or their import must be considered and weighed.

*Time and Labor; Factor # 1*[1]

Following the guidance of *Anderson* the court first seeks to determine the nature and extent of services rendered by plaintiffs' attorneys from their statements of the number of hours worked and their explanation of how they were spent, giving the opinions and comments of opposing counsel due consideration.

Plaintiffs' counsel have submitted brief summary statements of their work performed by dates and the time spent by four attorneys in ten calendar years from January 8, 1972 through March 30, 1981, supplemented by an additional statement covering the period May 1, 1981 to June 15, 1981. These claims are set out in the appendix.

The Company argues that the time claimed is unreasonable and evidently involved duplicating and unnecessary effort. The Company analyzes the time and work for which fees are claimed and suggests approval for a significantly lower amount. The plaintiffs counter by citing comparable time spent by the Company attorneys.

The Court cannot now make critical, detailed factual determinations on the exact nature, value, need for, or potential duplication of attorneys' efforts, during specific hours claimed, for services rendered from time to time over nearly a decade. Counsel themselves probably would have difficulty in elaborating upon their time records and the legal documents produced if such an effort were required of them.

Having studied the time claimed by plaintiffs' counsel, the Company's response, and plaintiffs' reply, and reflected upon the history and development of this case, the court concludes that it is not possible on this record to determine precisely which time claims (if any) ought not to be allowed as unnecessary or duplicative, and that it is not practical to make any further research

or hold a hearing for that purpose. The Court will accept the plaintiffs' statements concerning their time. Contrary to the position of counsel for the Company, it is concluded that a hearing in this respect would not be helpful to the Court and would only cause further delay and expense.

*Customary Fee For Like Work; Factor # 5*

Under *Anderson* the court turns next to a determination of the customary hourly rates of compensation charged in cases such as this.

Several considerations enter into the Court's determination of the appropriate hourly rate for services rendered in this case.

1. There is no "customary fee" known to this Court charged by counsel for plaintiffs in Title VII cases. Fees heretofore allowed by this Court have been in the range of $30 to $60 per hour, which the Court believes to be too low in this case.

2. A single hourly rate for attorneys' time is claimed for *all* services including the most routine office work, travel, and trial. (The trial time comprised a relatively small percentage of the total time worked).

3. The hourly rates appropriately chargeable in the last years of the decade are greater than in the first years. The plaintiff has not been able to collect for services periodically as rendered, during the decade, which is a factor weighing in favor of allowing a higher rate for services in the first years of the decade than would have been approved in those years.

4. On the information available to the Court, it is not possible to compute with any mathematical certainty the value of the various types of legal service; therefore, the Court will in the exercise of its discretion fix hourly rates for an *average of all services*.

5. The Court will consider other relevant factors, including those in *Johnson* and *Barber*, and adjust the basic fee to the extent warranted by their weight.

[1]. *Johnson-Barber* criteria identified herein for    brevity as "Factors # ____".

The Court will approve fees based on current rates reasonably chargeable in such cases rather than the rates charged in earlier years of the decade.

The fees to be awarded plaintiffs will be ascertained by multiplying the number of hours claimed by the hourly rates approved as set out in the appendix.

*Novelty and Difficulty of the Question Raised; Factor # 2*

The Court agrees with the Company that the legal questions raised in this case were not novel nor difficult for the plaintiffs' counsel although the records and facts involved were numerous and involved much work.[2] This criterion is given negative weight in the Court's determination of a fee award.

*Skill Required to Properly Perform the Legal Services Rendered; Factor # 3*

The superior skill and competence of the plaintiffs' counsel in Title VII cases is well known to this Court, widely recognized, and conceded by the Company. For Mr. Chambers and his firm this was a routine case. This factor is given no weight in the fee determination.

*Attorney's Opportunity Costs (Preclusion of Other Employment) In Pressing Instant Litigation; Factor # 4*

The Court has not been shown that acceptance of this employment by the plaintiffs' counsel resulted in any lost opportunity for the members of that firm because of the nature of the litigation or the identity of the parties. The Court agrees with the Company that for this firm in this case, the only loss of other employment opportunity resulted from the fact that time spent on this case was not available for efforts on behalf of other clients. In that respect, this case is not remarkable. The fee award compensates counsel for all their time at a high average rate. The Court gives no weight to this factor.

*Whether Fee Fixed or Contingent Attorneys Expectations at the Outset of the Litigation; Factor # 6*

This was a contingent fee case. Attorneys are entitled to charge more for their services when their compensation is contingent upon success. The probabilities of success is a legitimate factor to be considered in determining the amount of premium compensation.

In the Court's opinion, the probability of success by the plaintiffs in the case was well over 50 percent from the beginning. The settlement gives some credibility to this evaluation. Indeed, the success rate for plaintiffs in civil rights litigation in this district appears to encourage the pursuit of this type litigation and the contingency of a fee presents no deterrent. While the contingency of a fee weighs somewhat in favor of enhancement, it does not justify the amount claimed.

It is remembered that this litigation was supported by the NAACP Legal Defense Fund. The Fund paid $13,547.72 under an arrangement whereby it would advance expenses and subsistence at the rate of $100 per day, to be repaid out of any recovery of attorneys' fees and expenses.

*Time Limitation Imposed by the Client on the Circumstances; Factor # 7*

No weight affecting the amount of fees awarded is assigned to this factor.

*The Amount Involved or in Controversy and Results Obtained; Factor # 8*

The actual results obtained were:

(a) $165,000.00 back pay to be distributed to class members, and

(b) A Company commitment to: (i) continue to comply with Title VII and 42 U.S.C. § 1981, and (ii) pay the plaintiffs' counsel reasonable attorneys' fees and expenses and plaintiffs' costs.

The plaintiffs now seek a total of $214,447.99 for fees, costs, and expenses through June 15, 1981 (an additional claim is expect-

---

**2.** The Court is not bound in this decision by its remarks on the complexity of the case made during trial colloquy in which this case was compared with other civil rights cases pending before the Court.

ed for services yet to be rendered). In the total amount claimed $88,632.50 represents an enhancement of their attorneys' fees derived from the use of a "multiplier" of 2. Assuming arguendo that an award of attorneys' fees is a creditable "result obtained", it is bootstrap logic for a bonus resulting from a multiplier to be included in the "results obtained" for purposes of evaluating the "results obtained".

The very essence of a settlement is compromise in which each side yields. The parties have left to the Court the burden of deciding what is "reasonable" in the context of their settlement. The antithesis of this spirit of compromise would be to give the plaintiffs the amount asked.

*The Experience, Reputation and Ability of the Attorneys; Factor # 9*

This factor weighs in favor of an increased award.

*The Undesirability of the Case with the Legal Community in which the Case Arose; Factor # 10*

The Court does not consider this case to have been undesirable for the plaintiffs' attorneys since their firm has an excellent reputation for an active and successful practice representing plaintiffs in civil rights cases. This factor is given no weight.

*The Nature and Length of the Professional Relationship Between Attorney and Client; Factor # 11*

This factor deserves no weight in consideration of the fee award.

*Award in Similar Cases; Factor # 12*

The plaintiffs ask the Court to make awards for their services in amounts arrived at by multiplying total hours worked over nearly a decade by current billing rates to obtain what they call "lodestar" awards. They urge the Court with numerous citations and arguments to enhance the lodestar awards by 100% to an amount arrived at by applying a "multiplier" of 2. They justify such enhancement by reference to fulfilling a Congressional intent; as warranted by their fee contingency; the quality of their service; the complexity of the case; and as negating any notion that civil rights cases should be "litigated on the cheap".

The Company responds just as vigorously in opposition to any such enhancement, citing cases in this district and circuit. The Court is sensitive to the philosophy of the Act, aware of the precedents in this district and circuit in awarding attorneys' fees, and unwilling to be shamed into any enhancement of fees by a suggestion that not to do so in some way reflects an unfair attitude. The Court, pursuant to the approved consent decree, will fix a reasonable fee in the approximate amount normally paid in similar cases in the free market place.

The Court has given this aspect of the plaintiffs' claim most serious thought and concluded with a clear conscience that enhancement by 100% would be unfair and wrong. Courts and attorneys must be on guard to be fair and, just as important, to convey that image.

*Discount for Services Against Defendant Union*

Counsel did not heretofore apprise the Court of this issue; which is now to be decided on incomplete information. The Court had no part in settlement negotiations. It approved a proposed consent decree in which the only provision relating to counsel fees is as follows:

> "The Company shall pay plaintiffs' counsel reasonable attorney's fees and expenses and shall pay plaintiffs' costs. If the parties are unable to agree on the amount, the Court will determine the amount."

The Court interpreted this to mean: (1) that having settled the principle issues in litigation, pending since 1973, the parties were negotiating settlement of the attorneys' fees and expense issue; (2) that in the event of disagreement, the issue would be submitted as to the amount the Company would pay; and (3) that the Company was to pay all plaintiffs' counsel fees. Now, it appears they had not discussed any discount for services rendered against the union. The Court has no recollection of any discus-

sion of any obligation on the part of the defendant Union to pay anything toward a settlement of back-pay claims or attorneys' fees. It came as a surprise to the Court that the parties could settle the merits of such lengthy litigation involving the rights of so many and yet be so far apart on attorneys' fees. Although the Court finds a thinly implied concession in plaintiffs' statement that about 5% of its effort was directed against the defendant Union, the Court's best subjective judgment is that all the plaintiffs' fees and expenses are payable by the Company and should not be reduced by any discount for services rendered against the Union.[3]

The size of plaintiffs' total claim when compared with the amount suggested by the Company as reasonable and the back-pay award agreed upon, does give the Court some concern since the Court did not require full disclosure of this disparity to members of the class before approving the settlement. If the parties knew the plaintiffs were seeking more than the class back-pay and more than 4 times as much in fees and expenses as the Company was willing to pay, when the issues in litigation were being compromised, they should have disclosed that fact to the Court.

*Paralegal Time*

The Company's position brings the paralegal problem sharply into focus. Certainly, the proper use of paralegals is in the best interest of all parties to litigation. The Court will not pick over the time claimed for paralegals by counsel any more than it will undertake to do so for attorneys' time. The attorneys paid them for their work and are presumed to have considered, in their best judgment, their work to be worth at least what they were paid. It is clear that they were paid much less per hour than the $20 sought here. The same could be said about a salaried associate attorney in a law firm for whose services clients are billed at a higher hourly rate than the associate is paid. For purposes of fixing a reasonable attorney's fee and reim-

bursement for necessary expenses, are paralegals to be treated as more like lawyers than like clerks? If they are more like clerks than lawyers, (they have been paid and will not share in this fee) is it "reasonable" for an attorney to collect as reimbursement of expenses more than he paid out and make a profit?

The Court is not prepared on this record to resolve this problem. However, it does seem that the amount claimed for paralegals in this case is too high for their work since 1974; therefore, in an exercise of its discretion the amount claimed for paralegals will be reduced to $15,000. (see appendix)

*Costs and Expenses*

Again the Court looks to the *consent* decree for a starting point, and concludes that the parties themselves agreed that the Company would pay "plaintiff attorney's reasonable ... expenses" and "... plaintiffs' costs". Plaintiffs' "costs" are ascertainable with some degree of certainty when claims are measured by the taxable items authorized by statute. (28 U.S.C. § 1920). The plaintiffs have listed all claimed items under one heading "costs and expenses", which amounts to a claim that items not authorized as taxable "costs" are nevertheless "reasonable expenses". The Court's difficulty is that it cannot make critical judgments on the reasonableness of the expenses and costs in dispute for lack of sufficiently detailed information in the motion papers. The Court is not inclined to study the entire case file, read depositions, or take evidence to establish a record upon which "reasonableness" of each item can be judged.

Counsel are advocates. Plaintiffs' counsel admittedly—and properly—argue their own self interest.

Plaintiffs claim "as reasonable"
Costs and Expenses:

| | |
|---|---|
| 1–8–72 to 4–30–81 | $14,217.89 |
| 5–1–81 to 6–15–81 | 27.60 |
| | $14,245.49 |

---

**3.** Chambers second affidavit, page 3, and plaintiffs' reply to Defendant's Response to Plain- tiffs' Motion concerning fees, pages 24 and 24(a).

Defendants argue that a reasonable allowable award for Costs and Expenses should be:

1–8–72 to 4–30–81

| | |
|---|---|
| Costs | $2,527.26 |
| Expenses | 6,256.30 |
| | $8,783.56 |

In the exercise of its discretion the Court will award plaintiffs ___$10,000.00___ costs and expenses. (see appendix)

*Conclusion*

The Court concludes that the *Johnson-Barber* factors weigh more in favor of increasing than decreasing the award of attorneys' fees. In making this subjective—but considered—judgment the Court has given the plaintiffs the benefit of its doubts, resolving issues in their favor. Some examples are: The Court accepts their attorneys' statement as to the total hours they worked, making no deduction for possible duplication or unnecessary work. The rate per hour is higher than generally allowed in this district and is approved for *all* attorney work, a relatively small part of which was in-court service. The rate allowed is more than the normal billing rates when much of the work was done. No discount for services rendered against the Union is ordered, although such an adjustment would seem to have been a proper element in the settlement.

## ORDER

■ For the reasons set out in the above memorandum, IT IS ORDERED that the Company pay the plaintiffs:

Attorneys' Fees

| | |
|---|---|
| 1–8–72 to 4–30–81 | $78,551.25 |
| 5–1–81 to 6–15–81 | 2,527.50 |
| Paralegal Services | 15,000.00 |
| Costs and Expenses | 10,000.00 |
| | $106,078.75 |

## APPENDIX

Attorney Time — 1/8/72 to 4/30/81

| Name | Rate Claimed | Rate Allowed | Hours | Lodestar Award | Award Allowed |
|---|---|---|---|---|---|
| Chambers | $85/hr. | $75/hr. | 588.00 | $49,980.00 | $44,100.00 |
| Stein | 75/hr. | 65/hr. | 121.75 | 9,131.25 | 7,913.75 |
| Lanning | 75/hr. | 65/hr. | 6.00 | 450.00 | 390.00 |
| Belton | 75/hr. | 65/hr. | 4.25 | 318.75 | 276.25 |
| Becton | 75/hr. | 65/hr. | 68.00 | 5,100.00 | 4,420.00 |
| Wallas | 75/hr. | 65/hr. | 25.50 | 1,912.50 | 1,657.50 |
| Gibson | 65/hr. | 60/hr. | 259.75 | 16,883.75 | 15,585.00 |
| Flaxman | 75/hr. | 65/hr. | 64.75 | 4,856.25 | 4,208.75 |
| TOTAL | | | 1,138.00 | $88,632.50 | $78,551.25 |

Paralegal Time

| Hours | Rate | Lodestar Award | Amount Allowed |
|---|---|---|---|
| 1,003.25 | $20/hr. | $20,065.00 | $15,000.00 |

Costs and Expenses

| | Amount Claimed | Amount Allowed |
|---|---|---|
| Total Costs and Expenses | $14,217.89 | $10,000.00 |

Attorney Time – 5/1/81 to 6/15/81

| Attorney | Hours | Rate Claimed | Rate Allowed | Amount | Amount Allowed |
|----------|-------|--------------|--------------|--------|----------------|
| Chambers | 6.50 | $85.00 | $75.00 | $ 552.50 | $ 487.50 |
| Wallas | 24.00 | 75.00 | 65.00 | 1,800.00 | 1,560.00 |
| Gibson | 8.00 | 65.00 | 60.00 | 520.00 | 480.00 |
| TOTAL | | | | $2,872.50 | $2,527.50 |

Costs and Expenses – 5/1/81 to 6/15/81

| | |
|---|---|
| Xerox | $16.00 |
| Postage | 3.90 |
| Long Distance Telephone | 7.70 |
| TOTAL EXPENSES | $27.60 |